Next case for argument is 22-1438, In Re Float'N''Grill LLC. Mr. Amburn, whenever you're ready. Good morning, Your Honors. Dean Amburn, appearing on behalf of Appellant Float'N''Grill. I'm a patent attorney from Detroit, Michigan. And the reason I'm here is my client's request to have a reissue of their 132 patent to correct an error of not claiming the invention broadly enough. And the invention of the 132 patent is a floating apparatus for supporting a grill. And Float'N''Grill does actually have an online opportunity to purchase one of their floating apparatuses. Does the patent specification disclose any other means for securing the grill to the float besides MIG? Your Honor, it discloses one embodiment. And the one embodiment has many elements in it, including rectangular float, including the reference to the magnets, including the support elements. There are many elements that are included in that one embodiment. And what we have done is we've removed actually multiple different elements. I don't think you've answered my question, though. Is there any other means for securing besides magnets disclosed in the specification? Not disclosed, Your Honor, nor is there disclosed any way of making the float other than rectangular or including the material other than a buoyant material for the float. Do we agree that the legal standard that the standard we apply is that it has to be clear and unequivocally described in the spec? The embodiment does, Your Honor. I agree. Clear and unequivocally, anything beyond magnets? Show me. Yes. I mean, the issue here, Your Honor, and... Well, show me. Oh, I'm sorry? I thought you were going to show me where clear, clearly and unequivocally there's something other than magnets here in the spec. It's known to people that are skilled in the art, to a person of ordinary skill in the art. And this comes up in the... You still haven't turned to the patent itself to answer Judge Pearl's question. Can you turn to it? No, because I'm not sure... You can't turn to it, or no, you can't answer her question? Well, I'm not sure maybe I understand. I think what I'm driving at is it's clear that there is one embodiment in the patent, and that one embodiment refers to magnets. But that one embodiment also includes many other elements that we have excluded. And that same principle, if we were to apply that principle, that clearly there has to be a reference, then we wouldn't be able to remove any of those other elements. Let me rephrase the question that you're having trouble answering, I think. You cite the Rasmussen case in support of your argument. In Rasmussen we said, one skilled in the art who read Rasmussen's specification would understand that it is unimportant how the layers are adhered so long as they are adhered. And in your client's patent, is there anything that you can point to in the patent specification that would lead a person skilled in the art to understand that it's unimportant to have a magnet? Not any more than I can say for any of the other elements, Your Honor. But isn't that a problem then? No, only because... That's the test. The test is whether there is something in the specification that would lead a person skilled in the art to understand that the specific item, a magnet, is unimportant. If you look at the totality of the disclosure, for example, if you look at what is identified as the grill, it is referred... Can you show us in the patent what you... When you're referring to stuff in the spec, can you just guide us? It's a very short patent. Yes, Your Honor. So if you're going to use something... In the patent, and I will see if I can find a clear reference, the grill is simply referred to as a portable outdoor grill. And let's see. Portable outdoor grill, flattened bottom of a portable outdoor grill, item 76, and I'm referring to column 3, line 35. But, Your Honor, what I think the point might be with the portable outdoor grill is that there's no reference to that even being a metal grill. It goes on to talk about is removably securable to the plurality of magnets. Yes, Your Honor. The question you just pointed us to. Yes. But the issue here, I think the difficulty that I'm having is in relation to the fact that there are many elements that we remove from the reissue claims. And all of what we have just discussed, your points that are good points, obviously, they could be equally applied to all those other elements. We can make exactly the same statement, exactly the same argument. There is only reference to a rectangular grill. It's only referred to the float as being a bullion material. I guess what I'm struggling with is I'm seeing magnets all over your six pages of patent. I think I saw it ten times in six pages where three pages are figures. So can you point me to something else? If you want it to be broader than magnets, I feel like I need something really that you can point us to in the actual specification. Well, Your Honor, I think, again, there isn't something that says there is an option for magnets. There isn't anything in the patent that says there's an option for the grill to be rectangular or the float to be rectangular. Or that the material for the float could be something different than a bullion material. None of those references are in there. If you look at, though, this Court's In re Peters decision, which is still good law, has not been overruled, the same or similar exact situation was there, and that related to tips for a television. And, again, we could have the same argument. You wouldn't be able to look at their patent in In re Peters and find a different description of the tips than the one description there. Is In re Peters cited in blue? Yes, In re Peters is cited in the briefing, Your Honor. And In re Peters is the Federal Circuit opinion from 1983-723-F2D-891. But it's the same issue, Your Honors, of the fact that what is different in this case than the other cases where this Court has decided that there has to be, say, a clear description of an embodiment, that is what it is tied to. In our case, we have one single embodiment that has multiple elements. We have, in our reissue, we have removed many of these elements. And the same argument could be said, that there's no reference to it not being rectangular at the flow, or that it requires less than two support bars. But the fact of it is, if you look at In re Peters, even though that's not described, that there is a different way of having a tape or a tip shape, that was still something that was known as somebody skilled in the art. How do you deal with the language in the patent in column one, around line 33-ish? 33-ish? Yes, where it says, lastly, what has been needed is a plurality of magnets. Can you talk to me a little bit about that phrase, needed? Absolutely, Your Honor. Again, the interesting thing in this patent is that word, needed, applies to all of these elements, many of which we have removed from this patent, or in the reissue, I mean. So it refers to, however, what is needed is a floating apparatus for supporting a grill, including a substantially rectangular float. Well, again, just stopping right there. And then there's about 10 elements that are, quote, needed. Now, the patent office doesn't have any problem with us not calling it a rectangular float, even though, again, nowhere in the disclosure of the 132 patent is there reference to the ability of the float to be any other shape. So how can that be? Well, the reason is that, again, if you apply the principles of In re Peters, you can look to the way somebody skilled in the art would approach it. And importantly, there were two reissues in In re Peters, whether or not there was prior art that was relied upon or that was used in the case, and then you included an element to avoid the prior art, which is not the case here. There was never any prior art cited in this case that required including magnets or a plurality of magnets to avoid the prior art. And that's true in both the underlying patent, the 132 patent, and in the reissue claims. So just to be crystal clear, the patent office would allow these claims, even though we don't call it a rectangular float, even though we've eliminated about 10 other elements that are the same in terms of there's not alternatives defined except for the magnets. That's the only one they have the problem with. And the reason that that's wrong, Your Honors, is, again, it's a different issues and problems are different in this case than in the other cases where there has been an attempt to look for a different embodiment in a disclosure and then claim that embodiment. You know, in re Peters, we held that there was nothing in the specification to show that the tapered tips were essential or critical. Yes, sir. But here, this case is a little different because the magnets have a special property, the magnetism that other connectors don't have. And there's nothing in the specification that I could read that suggests that the use of a magnet is unimportant and is in any way not essential or critical. Because as described, that's the only thing disclosed. So I think this is a different case from in re Peters, correct? Your Honor, it's exactly the same situation because the issue of whether or not. Are you telling me that the use of a magnet is not essential or critical based on the way this specification is written? Absolutely, Your Honor. But the specification doesn't. Show me someplace in the specification that says that the magnet is just one of many components or one of many means of connecting or just exemplary or something. I find no language to that effect. Well, there isn't any language that makes it a critical element, Your Honor. And I think that's more the test that at least the board has argued. And there is the same position. In patents, typically you're not explaining how all of the elements that you're citing are not important. You're just identifying the elements. There's no benefit to, because in a way you're almost arguing that there could be prior art with the same elements. But that's not the way patents are written, typically, is to suggest that your own elements that you're including are somehow possibly not needed. And in re Peters stands for the proposition that you don't have to identify that there are different elements, but it can still be the same embodiment. I think part of the issue, Your Honor, too, is when this is part of just claim drafting, I think part of the confusion, and this is maybe even hard to explain, hard for me to explain, but there is a difference between an embodiment and an invention. And in all the other cases, the Antares case, the Forum U.S. case, the cases that came before, there is an effort to identify a different embodiment and then make claims and a reissue based on that. Okay, you're well into your rebuttals, so how about we go for the government. Yes, sorry, Your Honor, thank you. Thank you. Good morning, and may it please the court. Peter Salward on behalf of the USPTO Director. This court should affirm the board's- I just ask you to start off with in re Peters. I didn't see it listed in the table of authorities in blue, and so you presumably didn't respond to it in red. Now, it is in gray, and Judge Lynn may have already done your job for you in terms of distinguishing it, but why don't you give it a shot as well. Yes, Your Honor. I believe it was cited in the blue brief, and we did respond in the red brief on Peters. And the essential point is, I'll say, in two parts. One, Peters does not reference industrial chemicals Supreme Court case that this court traced back the history of this doctrine to and applied and elucidated in U.S. forum in interiors. So we don't have that court sort of explanation of how the controlling law in industrial chemicals would have affected the outcome in that case. It's not discussed. So that's one point. And the other is that it's just factually distinguishable. As Judge Lynn pointed out, the clips that were at issue in that case were kept in the reissued claims. The only thing that was removed is the shape of the clips. And whereas here, Float and Grill is trying to remove the plurality of magnets element entirely, not just one descriptor of it. How do we decide whether an element is critical or essential or unnecessary? Well, I'll start by saying I don't think there's a lot of guidance about that, because that test is not discussed in U.S. forum or interiors where this court discussed this issue in far more detail. It does appear it's just simply stated as a conclusion in Peters without a great deal of explanation, except that the Peters court- It's a conclusion that has significant consequence. It does. So shouldn't there be some clarity as to how one discerns whether an element is critical or essential? I think that Peters, given the more recent treatment of this court in U.S. forum and interiors, would be considered less thorough. Those courts didn't feel the need to address whether the element, in view of industrial chemicals, whether the element was critical or not. So when applying industrial chemicals as described in U.S. forum and interiors, there's a question of whether we even have to ask if the element is critical. Or whether it's critical or not, it has to be clearly and unequivocally disclosed. Now the board went a step beyond that here and said it is critical and then said it is not. Clearly and unequivocally disclosed that there are alternatives to magnets. Your friend referred back and forth several times to the fact that there were all these other things he changed in the claims. And they were no different in kind than the magnets. So how come you let him get away with that and not with this? So can you differentiate between what he's talking about? I can't explain the absence of an additional rejection. But I can conjecture, Your Honor, that this court sometimes will affirm on one ground and not reach the alternate ground because it's unnecessary. And so that the examiner here sort of, and then the board in reviewing that, took the low-hanging fruit. That the most important element of this claim is the magnets. Because the entire purpose of this support is to attach to the grill securably and removably and keep it stable in the water. And so you could see where the shape of the float, if it still floats, is less important. But it's hard to see any reasonable way that you could have this invention and not have something that's keeping the floats secure to the float support. But isn't that your appellant's argument? That the specification makes clear that you have to have something that attaches the grill to the float. But it doesn't necessarily have to be the only preferred embodiment that was disclosed to it, a magnet. It could be a nut and a bolt. So just to be clear, in the 132 patent, there is nothing, no other means besides the plurality of magnets disclosed for accomplishing this function. But there's nothing that requires more than a single embodiment to be disclosed. Correct. There is. The invention can be far broader than the single embodiment disclosed. I think the context is important, Your Honor. What we have here is the test under 251, which is not the test for written description. The test under 251 is that it must be clearly and unequivocally disclosed. And so if you want to claim alternate embodiments, they have to be clearly and unequivocally disclosed. What the Supreme Court said in Industrial Chemicals is that the new claims cannot merely be suggested to one of ordinary skill in the art. It's not enough that one of ordinary skill in the art would think, oh yeah, I can think of a bunch of ways that I might do this instead. That's not the standard. Because we're in the context of reissue claims under 251, it has to be clearly and unequivocally disclosed in the original specification that the inventor contemplated and intended to claim the invention attempting to be captured in the newly added claims. Can I ask you a housekeeping question, which is, if you were to prevail on the 251 issue, is there a need to deal with the second question raised here, which is indefiniteness? Indefiniteness covers fewer claims than the 251, right? That is correct, Your Honor. So if we did indefiniteness, we'd still have to do 251, but not the other way around, right? That's correct, Your Honor. Again, the board, I think mindful of Peters, did go through the trouble and say that the plurality of magnets are a critical element in the claim. And they found that the magnets are part of the support because they're embedded in it. That plurality of magnets is one of the elements recited to overcome the deficiencies of the prior art, among other elements. But in the alternative, the patent never described the plurality of magnets as exemplary or optional, and that the magnets are key to securing the grill for use in bodies of water. And putting all those things together, the board found it to be a critical element. And then, having found it to be a critical element, the board then went on to find that there is literally no other alternative to the plurality of magnets for performing this function disclosed. So it obviously cannot be that the new claims are clearly and unequivocally disclosed by the original specification. Maybe just for fun, to play devil's advocate, I'm just kind of, I think, harping off of really your opposing counsel's sort of logic. Do you believe that a cup holder is needed for this invention? Or critical, maybe I should use your terminology, critical. Right. Your Honor, I don't believe it's critical. And as I said, and Judge Lynn asked a very good question, what does it mean for something to be critical? Well, can you perform the primary function of the invention without that element? The cup holder is the most obvious example of something that you can cut and will make no difference at all. I do think there's, and I'm inclined to think, because the Peters Court didn't take account of industrial chemicals, that that's not necessarily a proper inquiry. That this court is bound to apply the inquiry in industrial chemicals and say, simply, it can't be suggested, it has to be clearly and unequivocally disclosed. Thank you. Thank you. We'll restore two minutes of rebuttal. Thank you, Your Honor. Really quickly, a couple things. One thing, too, that I have included on page 13 of our brief is a colorized version of the figure one and claim four, reissue claim four. And what we have done here with the reissue claim four is we've took out plurality of magnets, but we've left in the exact way that the grill and the float have to be attached together. It's just not specifying exactly that it has to be magnets. So what does that mean? It means that it could include magnets. Magnets are not excluded from claim four or the other claims. And I think that's an important distinction here. As Your Honor, Lynn pointed out, in one of your prior opinions, and this is ANOVA, pure water versus safari, the court held, particular embodiments appearing in written descriptions will not be used to limit claim language that has broader effect. And even where a patent describes only one embodiment, which is what we have here, single claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion. And that's not what occurred here. We have a right to claim an embodiment. It's the same embodiment. The reference to the other cases, including the Supreme Court case, what is different is that in all of those cases, it related to trying to include or claim a new invention or a new embodiment of an invention that was not disclosed in the original patent. And that is the night and day difference between these two cases. N. Ray Peters still applies here because a person of ordinary skill in the art would be able to understand that this is not complicated. You can attach a float to a grill with something beyond magnets, and that's within their knowledge and skill, and that there is further, there was not prior art relied upon. That's the difference. It's the same embodiment. We're not excluding magnets. It's not a different invention. Thank you, Your Honor. We thank both sides in the cases submitted.